# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BLAINE CLAYTON,<br><br>        Plaintiff,<br><br>vs.<br><br>STEVEN SMITH, et al.,<br><br>        Defendants. | Case No.: 1:17-cv-00309-BAM (PC)<br><br>SCREENING ORDER DISMISSING FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A COGNIZABLE CLAIM, WITH LEAVE TO AMEND<br><br>(ECF No. 13)<br><br>**THIRTY (30) DAY DEADLINE** |

Plaintiff Blaine Clayton ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has consented to the jurisdiction of a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF No. 9.)

Currently before the Court is Plaintiff's first amended complaint, filed August 14, 2017. (ECF No. 13.)

**I.**     <u>**Screening Requirement and Standard**</u>

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity and/or against an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2); 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor. Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged, Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss v. United States Secret Service, 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678, 129 S. Ct. at 1949 (quotation marks omitted); Moss, 572 F.3d at 969.

## II. Plaintiff's Allegations

Plaintiff is currently incarcerated at California State Prison, Corcoran in Corcoran, California. The events in the complaint are alleged to have occurred at the Sierra Conservation Center ("SCC"). Plaintiff names the following defendants: (1) Dr. Steven Smith, a physician at SCC; (2) Dr. W. Savage, a physician at SCC; (3) Dr. Lor, DDS, a dentist at SCC; and (4) Dr. T. McDow, a supervising dentist at SCC.

Plaintiff alleges as follows: On May 30, 2014, Plaintiff was incarcerated at SCC and assigned to Facility "C" Plant Operations Maintenance Shop. During work hours, Plaintiff was surrounded by a group of inmates whom targeted him for his refusal to engage in Security Threat Group (STG) activities. Immediately after the inmates surrounded the Plaintiff, they began a vicious attack upon Plaintiff's person. After he heard a loud thud in the area of the inmate's

restroom, Supervisor R. Alessio left his desk and entered the hallway and found a group of inmates gathered near the inmate restroom. Mr. Alessio observed Plaintiff's face was red in color around his nose area. Mr. Alessio summoned co-worker P. Brown and requested that he take Plaintiff back into the shop.

Out of fear of further attacks, Plaintiff began rummaging through a scrap metal cart in search of a proper piece of stock metal to fashion it into a weapon to defend himself. Mr. Brown observed Plaintiff having a weapon and called Correctional Officer G. Dean. Officer Dean subsequently summoned all available Facility "C" staff to respond to the Maintenance Shop. Responding Officer J. Overton observed that Plaintiff had small cuts on his right forearm and blood on his neck. Officer Overton placed Plaintiff in restraints and escorted him to the medical facility for evaluation and treatment.

As result of the discovery of metal stock, Plaintiff was subsequently rehoused in the Administrative Segregation Unit (Ad-Seg) and issued a CDC 115, Serious Rules Violation Report, Log #05-14-C-034 for violation of California Code of Regulations, Title 15, Section 3006(a), Contraband, Possession of an Inmate Manufactured Weapon.

Immediately upon placement in the Ad-Seg, and with great efforts at speaking due to injuries, Plaintiff reported to the on-duty nurse that he experienced problems speaking, he was bleeding within the mouth, he had problems breathing due to loss of support to the tongue, teeth were not aligned, suffered significant pain all as a result of the assault said group of inmates, and requested that emergency measures and/or care be taken for immediate surgery without any further delays. The nurse immediately contacted Dr. Krpan and reported Plaintiff's injuries. Dr. Krpan scheduled an x-ray on June 2, 2014, and ordered a pureed diet for five (5) days. Dr. Krpan did not initiate emergency care or order immediate surgery taking into account Plaintiff's serious injuries.

The California Code of Regulations, Title 15, section 3350(a) provides that the "department shall only provide medical services for inmates which are based on medical necessity and supported by outcome data as effective medical care. In the absence of available outcome data for a specific case, treatment will be based on the judgment of the physician that

3

the treatment is considered effective for the purpose intended and is supported by diagnostic information and consultations with appropriate specialists. Treatments for conditions, which might otherwise be excluded, may be allowed to section 3350.l(d)." California Code of Regulations Title 15, section 3350(b) (1) defines "medically necessary" as "health care services that are determined by the attending physician to be reasonable and necessary to protect life, prevent significant illness or disability, or alleviate severe pain, and are supported by health outcome data as being effective medical care."

On information and belief, a fractured jaw is best evaluated at a hospital, at the emergency department where it is more likely to have specialists (oral surgeons) on call to help evaluate and treat Plaintiff if necessary. The fact that Plaintiff suffered problems breathing was a condition in itself that needed to be addressed immediately.

On June 2, 2014, Dr. Krpan took x-rays of Plaintiff's mandible. After review of the x-ray and after further physical examination, Dr. Krpan diagnosed Plaintiff with a fracture at the left angle of the mandible. Plaintiff reported to Dr. Krpan that the pain in his jaw had become progressively worse and requested emergency transport to a hospital to wire the teeth together. Rather than arrange for emergency surgery, Dr. Krpan recommended follow-up care with a doctor on call.

On June 3, 2014, Plaintiff was interviewed by Defendant Smith. During the interview, Plaintiff complained that the pain had become progressively worse, bleeding continued within his mouth, he had difficulty breathing due to loss of support to the tongue, his jaw was unaligned, and he continued experiencing difficulty in speaking. In response to Plaintiff's complaints, Defendant Smith displayed personal hostility.

After Defendant Smith examined Plaintiff's x-ray taken the previous day, Defendant Smith determined that Plaintiff had not suffered a fracture. Plaintiff informed Defendant Smith that contrary to his evaluation, a doctor determined the previous day that x-rays reflected that the left mandible was fractured. In response, Defendant Smith angrily informed Plaintiff, "You're lucky I'm even seeing you. According to the deal we have with the State, I didn't have to see or treat you until 30 days." After attempting to discuss his lack of treatment, Plaintiff leaves the

interview, since, at this point, Defendant Smith has worked himself into a fit of rage, insulting and yelling at the Plaintiff.

Immediately after the interview with the Plaintiff, Defendant Smith confirmed left-sided mandibular fracture. Defendant Smith refused to order emergency care or surgery to wire shut Plaintiff's fractured jaw in an effort to prolong Plaintiff's suffering and to delay any required surgery. In an effort to delay surgery, Defendant Smith contacted CDCR Dental Department and arranged for consultation. The Dental Department recommended that Plaintiff be placed on Clindamycin empirically until evaluation from Oral Surgeon.

On or about June 5, 2014, Defendant Savage interviewed Plaintiff regarding his fractured jaw and refused to provide any medical care and/or emergency surgery to wire shut Plaintiff's fractured jaw.

On information and belief, after the interview with Plaintiff on June 3, 2014, Defendants Smith, Savage, Lor and McDow met and discussed how they would respond to Plaintiff's complaints requesting to have his jaw wired shut. On information and belief, corresponding to an already existing custom by CDCR medical and dental departments, the group agreed to characterize the delay for surgery as an "unforeseen circumstance." Specifically, Dr. Gowan had to reschedule his clinic until June 20, 2014. After creating this false and fabricated story, Defendants Smith, Savage, Lor and McDow delayed surgery to wire shut Plaintiff's jaw until June 20, 2014, resulting in Temporomandibular joint (TMJ) dislocation, pain and suffering.

Plaintiff seeks a declaratory judgment, injunctive relief, damages, costs and attorney's fees, and such other relief as the Court deems just and equitable.

## III. Deficiencies of Complaint

### A. Deliberate Indifference to a Serious Medical Need[1]

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir.

---

[1] Plaintiff asserts a claim for a violation of the Eighth Amendment and for a violation of the Due Process Clause of the Fourteenth Amendment due to the lack of medical care. (See Compl., ECF No. 13, at p. 9 ¶¶ 30-31.) However, Plaintiff's allegations to medical care are properly analyzed under the Eighth Amendment, rather than the rubric of substantive due process under the Fourteenth Amendment. County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998).

2006). Although prison conditions may be restrictive and harsh, prison officials must provide prisoners with food, clothing, shelter, sanitation, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832–33 (1994) (quotations omitted). "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate must show 'deliberate indifference to serious medical needs.'" Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104, 97 S. Ct. 285, 291, 50 L.Ed.2d 251 (1976)).

The two part test for deliberate indifference requires the plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096; Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012). The prison official must be aware of facts from which he could make an inference that "a substantial risk of serious harm exists" and he must actually make the inference. Farmer, 511 U.S. at 837.

"Deliberate indifference is a high legal standard." Id. at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). The indifference must be substantial, and "[m]ere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980). Differences of medical opinion between the prisoner and health care providers also do not violate the Eighth Amendment. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989); Lyons v. Busi, 566 F.Supp.2d 1172, 1191-1192 (E.D. Cal. 2008). Also, "a difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a [§] 1983 claim." Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To establish that such a difference of opinion amounted to deliberate indifference, the prisoner "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances" and "that they chose this course in conscious disregard of an excessive risk to [the prisoner's] health." See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996).

///

"Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment . . . . Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1998)). However, to establish a deliberate indifference claim arising from a delay in providing medical care, a plaintiff must allege facts showing that the delay led to further injury. See Hallett v. Morgan, 296 F.3d 732, 745-46 (9th Cir. 2002); McGuckin, 974 F.2d at 1060; Shapley v. Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam). An "isolated exception" to the defendant's "overall treatment" of the prisoner does not state a deliberate indifference claim. Jett, 439 F.3d at 1096.

### 1. Defendants Smith, Savage, Lor and McDow

As an initial observation, the Court notes that although Plaintiff has made a short and plain statement in this amended complaint, he has omitted some factual allegations from his original complaint regarding treatments that he received. For example, Plaintiff has omitted facts previously alleged about medications, consultations and x-rays provided by Defendants. If Plaintiff chooses to amend his complaint, he should state all facts giving rise to his claim, describing what happened, when it happened, and who was involved. Plaintiff should avoid gaps in explaining the relevant events.

Regarding the individual defendants, Plaintiff alleges that Defendant Smith initially determined that Plaintiff had not suffered a fracture, but after Plaintiff left the consultation, Defendant Smith confirmed a left-sided mandibular fracture. Defendant Smith then contacted CDCR Dental Department and arranged for a consultation, and that department recommended that Plaintiff be placed on Clindamycin empirically until evaluation by an oral surgeon. These allegations do not show deliberate indifference by Defendant Smith. Plaintiff asserts that emergency care or surgery should have been performed, but at most this suggests a disagreement between him and the doctor regarding treatment. Plaintiff also asserts that Defendant Smith delayed treatment in an effort to prolong Plaintiff's suffering, but this appears to be contradicted by Plaintiff's allegations that Defendant Smith ordered a consultation. Plaintiff must plead facts

showing that Defendant Smith chose a course of treatment that was medically unacceptable under the circumstances, and in conscious disregard to a serious risk to Plaintiff's health.

Plaintiff also alleges that Defendant Savage interviewed Plaintiff regarding his fractured jaw, but did not provide care. Previously, Plaintiff alleged that Defendant Savage provided Tylenol for pain. Plaintiff does not allege facts showing that he had a substantial risk of serious harm that Defendant Savage knew about, but was nevertheless deliberately indifferent to that risk. Plaintiff again asserts that he did not have his jaw wired shut, but as explained above, this only suggests a disagreement between him and the doctor regarding treatment.

Plaintiff alleges that Defendants Smith, Savage, Lor and McDow agreed to characterize the delay in him having surgery from June 3, 2014 until June 20, 2014 as "unforeseen circumstances." However, as noted above, Plaintiff also alleges that he was recommended for a consultation, for medication treatment, and for evaluation by an oral surgeon. Plaintiff also alleges that Dr. Gowan, who is not named as a defendant, had to reschedule his clinic until June 20, 2014. Plaintiff does not allege how Defendants Smith, Savage, Lor or McDow caused any delay in treatment to Plaintiff, and that they did so in conscious disregard of a known risk to Plaintiff's health. To the extent Plaintiff seeks to allege a claim of conspiracy, he has failed to show any actual deprivation of his constitutional rights through an agreement and acts in furtherance of that agreement. See Sykes v. State of California, 497 F.2d 197, 200 (9th Cir. 1974) (to state a conspiracy claim, a plaintiff must plausibly allege that defendants made a specific agreement to violate plaintiff's constitutional rights, and that an identified overt act was done in furtherance of the conspiracy); Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (a plaintiff must show an agreement as well as an actual deprivation of constitutional rights resulting from the alleged conspiracy).

Finally, Plaintiff makes allegations that suggest he intends to bring a claim against Dr. Krpan. However, Plaintiff does not name Dr. Krpan as a defendant. If he seeks to state a claim against Dr. Krpan, he must name that person as a defendant. Furthermore, although Plaintiff alleges that Dr. Krpan did not initiate emergency care for Plaintiff's jaw injury, he alleges that Dr. Krpan scheduled an x-ray, ordered a pureed diet, diagnosed him with a fracture, and

recommended follow-up care. Thus, Plaintiff has not shown deliberate indifference by Dr. Krpan. Rather, Plaintiff's allegations regarding Dr. Krpan suggest that Plaintiff preferred a different treatment, which, as explained above, is not sufficient to state a claim for deliberate indifference to a serious medical need.

### B. Declaratory Relief

In addition to damages, Plaintiff seeks declaratory relief, but because his claims for damages necessarily entail a determination whether his rights were violated, his separate request for declaratory relief is subsumed by those claims. Rhodes v. Robinson, 408 F.3d 559, 566 n. 8 (9th Cir.2005). Therefore, Plaintiff's claim for declaratory relief is dismissed.

### C. Injunctive Relief

Plaintiff seeks injunctive relief against Defendants (and their successors or agents) to arrange for follow-up medical treatment by a medical practitioner with expertise in the treatment of broken jaw bones. However, Plaintiff has since been transferred to a different institution—Corcoran State Prison—and Defendants are allegedly employed as his prior institution, SCC. As a general rule, the transfer of a prisoner-plaintiff to another facility renders moot his claims for injunctive relief against the transferring or releasing facility. Rhodes v. Robinson, 408 F.3d 559, 566 n. 8 (9th Cir. 2005). As a result, Plaintiff's claim for injunctive relief against Defendants is moot due to his transfer.

## CONCLUSION AND ORDER

The Court finds that Plaintiff has not stated a cognizable federal claim against any of Defendants in his first amended complaint. The Court will grant Plaintiff **one final opportunity** to cure the identified deficiencies which Plaintiff believes in good faith, are curable. Lopez v. Smith, 203 F.3d 1122, 1130 (9th Cir. 2000).

If Plaintiff chooses to amend his complaint, he may not change the nature of this suit by adding new, unrelated claims in his second amended complaint. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints). The second amended complaint should be brief, Fed. R. Civ. P. 8(a), but it must also state what each named defendant did that led to the deprivation of Plaintiff's constitutional rights, Iqbal, 556 U.S. at 678-89, 129 S. Ct. at 1948-49.

Although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Twombly, 550 U.S. at 555 (citations admitted).

Plaintiff is also reminded that an amended complaint supersedes all prior complaints. Lacey, 693 F.3d at 927. Absent prior court approval, the amended pleading must be complete in itself without reference to any prior pleading. Local Rule 220.

Based on the foregoing, it is HEREBY ORDERED that:

1. Plaintiff's first amended complaint, filed August 14, 2017 (ECF No. 13), is dismissed for the failure to state a cognizable claim for relief, with leave to amend;
2. The Clerk's Office shall send to Plaintiff a complaint form;
3. Within **thirty (30) days** from the date of service of this order, Plaintiff shall file a second amended complaint curing the deficiencies identified by the Court in this order, or a notice of voluntary dismissal; and
4. **If Plaintiff fails to comply with this order, this action will be dismissed, with prejudice, for the failure to state a claim, to obey a court order, and to prosecute.**

IT IS SO ORDERED.

Dated: **November 8, 2017**  /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE